**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDOLPH TOWNSHIP BOARD OF EDUCATION,<br><br>*Plaintiff*,<br><br>v.<br><br>M.T. AND I.T. o/b/o M.T.,<br><br>*Defendants*. | Civil Action No. 22-1762<br><br>**OPINION**<br><br>June 29, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon competing renewed Motions for Summary Judgment filed by Plaintiff Randolph Township Board of Education ("the District") and Defendants M.T. and I.T. on behalf of their son, M.T. ("Defendants"), pursuant to Federal Rule of Civil Procedure 56. (ECF 113, "District's Motion" or "Dist. Mot."; ECF 114, "Defendants' Motion" or "Defs. Mot.") Both sides opposed, and both sides replied. (ECF 115, "Defendants Opposition" or "Defs. Opp."; ECF 116, "District Opposition" or "Dist. Opp."; ECF 118, "Defendants Reply" or "Defs. Reply"; ECF 119, "District Reply" or "Dist. Reply.") The Court has considered the parties' submissions and decides the Motions without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Court **DENIES** the District's Motion, **DENIES** Defendants' Motion, and **REMANDS** this matter to the ALJ for further proceedings consistent with this Opinion.

1

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This special education matter comes before the Court on the District's appeal of the Administrative Law Judge's ("ALJ") April 10, 2025 remand decision ("Remand Opinion" or "ALJ Rem. Op."). (*See* Dist. Mot.; Defs. Mot.) The ALJ's Remand Opinion again granted Defendants' due process petition and concluded that the District violated M.T.'s rights under the Individuals with Disabilities Education Act ("IDEA"). (*See* ALJ Rem. Op.) The Court has jurisdiction over this matter under 20 U.S.C. § 1415(i)(2).

### A.  Factual Background[1]

The parties are familiar with the facts of this case. As such, this Court provides only a brief summary of those facts at the outset and will incorporate additional facts as they are relevant to the discussion of the issues presented.

M.T. was born on October 25, 2008. (Dist. SUMF 2 ¶ 2.) At all relevant times, M.T resided in the Township of Randolph. (*Id*. ¶ 3). In 2016, M.T. was classified as eligible for special education services. (Defs. SUMF 2 ¶ 67.) M.T.'s individualized education program ("IEP") classification reflected "Other Health Impaired." (Dist. SUMF 2 ¶ 8; *see id.* ¶ 68). M.T. began showing signs of difficulty in the general education classroom at the beginning of fourth grade,

---

[1] The Court incorporates by reference the factual background in its May 13, 2024, Summary Judgment Opinion. (ECF 98, "Opinion" or "Op.") Additional facts and procedural history are drawn from the Complaint (Compl.), the parties' statements of material undisputed facts ("SUMF"), (*see* ECF 46-5, "Defs. SUMF"; ECF 47-3, "Dist. SUMF"; ECF 114-1, "Defs. SUMF 2"; ECF 113-2, "Dist. SUMF 2"), the ALJ's decisions, (ECF 46-4, "ALJ Opinion" or "ALJ Op."; ALJ Rem. Op.), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

marking the start of several years of IEP revaluation meetings and amendments, educational testing, and psychological evaluations.  (ALJ Rem. Op at 19–23; Dist. SUMF 2 ¶¶ 9–42.)

M.T.'s behavioral issues progressed over time and worsened during the 2019-2020 school year.  (ALJ Rem. Op. at 33–39, Dist. SUMF 2 ¶¶ 28, 31, 35, 44, 47, 49.)  On January 14, 2020, M.T. ran out of the school building toward a busy street ("the elopement").  (ALJ Rem. Op. at 22; Dist. SUMF 2 ¶ 49; Defs. SUMF 2 ¶ 15.)  M.T. was subsequently restrained and returned to a classroom.  (ALJ Rem. Op. at 22; Dist. SUMF 2 ¶¶ 49–51; Defs. SUMF 2 ¶ 15.)  M.T. made multiple threats about harming himself.  (Dist. SUMF 2 ¶ 51; Defs. SUMF 2 ¶ 15.)  Since the incident involved threats about self-harm, M.T required mental health clearance before returning to school, per district policy.  (ALJ Rem. Op. at 22–23; Dist. SUMF 2 ¶ 52; Defs. SUMF 2 ¶ 30.)  Defendants were given the choice between having M.T. evaluated by the school's designated mental health facility, Saint Clare's Hospital, or by their own psychologist.  (ALJ Rem. Op. at 22-23; Dist. SUMF 2 ¶ 53.)  Defendants opted to take M.T. to their own psychologist, Stuart Leeds, Psy. D., for evaluation.  (Dist. SUMF 2 ¶ 54; Defs. SUMF 2 ¶ 19).

Dr. Leeds prepared a report with several recommendations, but the District found the report conflicting and concluded it did not provide the requisite clearance for M.T. to return to school. (Dist. SUMF 2 ¶ 56; Defs. SUMF 2 ¶ 20.)  The District's physician, Dr. Ciufalo, also found Dr. Leeds' report unsatisfactory and did not clear M.T. to return to school.  (ALJ Rem. Op. at 23.)  After the elopement, The District implemented a home instruction program for M.T.  (*Id*.; Dist. SUMF 2 ¶ 76.)  Defendants also enrolled M.T. at Stepping Forward, a therapeutic mental health

3

program that provides counseling and educational services to children.  (ALJ Rem. Op. at 25; Dist. SUMF 2 ¶¶ 76–80; Defs. SUMF 2 ¶¶ 31–33.)

The parties met for their annual IEP meeting on January 24, 2020.[2]  (ALJ Rem. Op. at 24; Dist. SUMF 2 ¶ 68.)  The meeting primarily focused on M.T.'s education during the 2021-2022 school year.  (Dist. SUMF 2 ¶ 68.)  An IEP was proposed which would have placed M.T. in the District's Oasis program, which provided students with individualized academic support, family and group therapy sessions, and social skills groups.  (Dist. SUMF 2 ¶¶ 68–71.)

Following the statewide closure of schools at the onset of the COVID-19 pandemic, the District provided M.T. with work to complete remotely.  (ALJ Rem. Op. at 26; Dist. SUMF 2 ¶¶ 84–87.)  M.T. struggled to willfully participate in the remote learning and additional speech services offered by the District throughout the remainder of the school year.  (ALJ Rem. Op. at 26; Dist. SUMF 2 ¶¶ 87–89.)

On June 10, 2020, Defendants signed an Enrollment Agreement for M.T. to attend Hampshire Country School ("Hampshire"), an out-of-state residential placement, for the 2020-2021 school year.  (Dist. SUMF 2 ¶ 93.)  On June 23, 2020, Defendants sent the District the required ten-day notice indicating their plan to enroll M.T. at Hampshire.  (ALJ Rem. Op. at 28; Dist. SUMF 2 ¶ 94; Defs. SUMF 2 ¶ 40.)  The District allegedly responded with a statement that it would "vigorously defend [its] position in litigation."  (ALJ Rem. Op. at 12, 17, 39.)  On July

---

[2] Prior to the IEP meeting, Defendants had M.T. evaluated by Jennifer Zeisz, Ph.D, a child and adolescent clinical psychologist.  (ECF 55-17 at P-60.)  Dr. Zeisz opined M.T. "present[ed] with a protracted history of neuro-developmental difficulties that are best captured by the diagnosis of an ***autism spectrum disorder*** (ASD) without intellectual impairments."  (*Id.* (emphases in original).)  While Dr. Zeisz's report was provided to the IEP team prior to the meeting, the District did not accept Dr. Zeisz's finding nor include her diagnosis in the IEP.  (ALJ Rem. Op. at 23.)

14, 2020, Defendants filed a due process petition seeking compensatory education and reimbursement for M.T., and for the District to pay for M.T.'s placement at Hampshire. (*Id.* at 2.)

### B. 2022 Administrative Proceedings

In 2022, an administrative due process hearing was held before the ALJ over the course of eight days. (*Id.* at 2–3.) The hearing concerned two issues: (i) whether the District denied M.T. a free, appropriate public education ("FAPE") for the 2019-2020 and 2020-2021 academic years, and (ii) whether M.T.'s unilateral placement at Hampshire was appropriate under the circumstances. (*Id.* at 3.) On February 22, 2022, the ALJ issued a decision in favor of Defendants, finding that the District failed to provide M.T. a FAPE and awarding Defendants compensatory damages for M.T.'s placement at Hampshire, reimbursement for travel and other expenses related to M.T.'s placement at Stepping Forward, and costs related to the services of M.T.'s doctors. (*Id.* at 3; ALJ. Op. at 26, 27, 36.) The ALJ also ordered the District to update M.T.'s IEP to reflect his placement at Hampshire. (ALJ Op. at 36.)

### C. Initial Proceedings in this Court

The District filed a Complaint in this Court challenging the ALJ's findings and decision on March 30, 2022. (*See generally* Compl.) On May 20, 2022 Defendants filed an answer and counterclaim seeking enforcement of the ALJ's order, a declaration that they were the prevailing party of the administrative action, attorneys' and experts' fees associated with the action(s), and any other relief deemed proper by this Court. (*See generally* ECF 4.)

Both parties filed motions for summary judgement on November 30, 2022, (ECF 46; ECF 47), oppositions to those respective motions on January 11, 2023, (ECF 63; ECF 64), and replies on February 1, 2023. (ECF 66; ECF 67.) On May 13, 2024, this Court denied both motions and

remanded the matter to the ALJ, requesting further clarity and legal analysis on a number of issues. (Op. at 21–22.)

### D.  Post-Remand Proceedings

On April 10, 2025, the ALJ issued a revised final decision.  (*See* ALJ Rem. Op.)  The ALJ's Remand Opinion again found for Defendants, concluding that (1) the District denied M.T. a FAPE from January 2020-March 2020; (2) the District denied M.T. a FAPE for the 2020-2021 school year; (3) the District did not deny M.T. a FAPE during the school years preceding 2020; (4) Defendants were not entitled to compensatory education from March 13, 2020 through June 2020; (5) Defendants' unilateral placement of M.T. at Hampshire was appropriate.  (*Id.* at 40, 45.)  The ALJ ordered the District to reimburse Defendants for (1) M.T.'s placement costs at Hampshire commencing in August 2020; (2) travel and related expenses related to M.T.'s enrollment in Stepping Forward from January 2020 to March 13, 2020; and (3) costs related to Defendants' use of private evaluations and expert witnesses.  (*Id.* at 46.)

The District filed a Motion for Summary Judgment asking this Court to reverse the ALJ's April 10, 2025 decision on September 12, 2025.  (*See generally* Dist. Mot.)  Defendants filed a Cross-Motion for Summary Judgment, asking this Court to affirm the ALJ's decision, on the same day.  (*See generally* Defs. Mot.)  Both sides opposed, and both sides replied.  (Defs. Opp.; Dist. Opp.; Defs. Reply; Dist. Reply.)

### II.    LEGAL STANDARDS

### A.  Statutory Framework: Individuals With Disabilities Education Act

Under the IDEA, public educational institutions must "identify and effectively educate" disabled students by providing them with a FAPE or, alternatively, by "pay[ing] for their education elsewhere if they require specialized services that the public institution cannot provide."  *P.P. ex*

6

*rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). The IDEA imposes both substantive and procedural requirements on school districts. "[F]irst, they must provide an 'appropriate' education to a child with special needs, and second, they must construct a program in the [least restrictive environment] and appropriate to the needs of the child." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 361 (D.N.J. 2002).

### i.  FAPE

A FAPE "consists of educational instruction specially designed to meet the unique needs of the . . . child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.*, *Westchester Cnty. v. Rowley*, 458 U.S. 176, 188–89 (1982); *see also School Dist. of Philadelphia v. Kirsch*, 722 F. App'x 215, 222 n.5 (3d Cir. 2018). "Although a state is not required to maximize the potential of every handicapped child, it must supply an education that provides 'significant learning' and 'meaningful benefit' to the child." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).

A public education institution provides a FAPE by way of an IEP. 20 U.S.C. § 1414(d). A child's IEP is a written document that must include several elements, such as the child's present level of performance, how their disability affects their performance, and measurable yearly goals in light of the child's disability. *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (citing 20 U.S.C. § 1414(d)(1)(A)). The IEP must also state "the special services that the school will provide" the child. *Ridley Sch. Dist.*, 680 F.3d at 269 (quoting *Schaffer v. Weast*, 546 U.S. 49, 53 (2005)). Further, the IEP "must be 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citing

7

*Rowley*, 458 U.S. at 206–07).  However, "[a]lthough the IEP must provide the student with a 'basic floor of opportunity,' it does not have to provide 'the optimal level of services,' or incorporate every program requested by the child's parents."  *Ridley Sch. Dist.*, 680 F.3d at 269.

"In administrative and judicial proceedings, the school district bears the burden of proving the appropriateness of the IEP it has proposed."  *M.A. ex rel. G.A.*, 202 F.Supp.2d at 361.  Here, the relevant inquiry is whether "the IEP, which calls for placement in an out of district school, would confer a *meaningful* educational benefit" on M.T.  *See id.*; *see also Shore Reg'l*, 381 F.3d at 199 (citing *Rowley*, 458 U.S. at 206–07) (the school district must show that "it complied with the procedures set out in the IDEA and that the IEP was 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the child's 'intellectual potential'").

### ii.   Least Restrictive Environment

Once a child's educational program is determined, the school district must attempt to place the child in the "least restrictive environment" ("LRA").  20 U.S.C. § 1412(a)(5).  The LRA "is the one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled."  *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 535 (3d Cir. 1995).  The requirement establishes a strong preference for mainstreaming disabled children by educating them with non-disabled children in the same classrooms.  *See id.* at 533; *Oberti v. Clementine Bd. of Educ.*, 995 F.2d 1204, 1213–14 (3d Cir. 1993).  The ultimate mandate of the mainstreaming requirement is that "a disabled child be placed in the least restrictive environment … that will provide him with

a meaningful educational benefit." *See T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000).

In determining whether a school district is in compliance with the IDEA's mainstreaming requirement, the Court must determine (1) "whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily," and (2) in the event the Court finds placement outside of the regular classroom is necessary, "whether the school has mainstreamed the child to the maximum extent appropriate[.]" *Oberti*, 995 F.2d at 1215 (internal citations omitted).

### iii.    Reimbursement and Compensatory Education

"The IDEA allows for reimbursement." *C.S. v. Montclair Board of Education*, No. 16-3294, 2017 WL 4122433, at *3 (D.N.J. Sept. 18, 2017). "Parents may unilaterally place their child at a different school, but are eligible for reimbursement from the school district if, and only if, the school district has not offered the student a FAPE." *J.F. v. Byram Twp. Bd. of Educ.*, 812 F. App'x 79, 81 (3d Cir. 2020) (citing *Shore Reg'l*, 381 F.3d at 198); N.J. Admin. Code § 6A:14–2.10(d). Thus, when parents seek reimbursement for a unilateral placement, the first inquiry is whether the school district offered a FAPE. *Shore Reg'l*, 381 F.3d at 198. If the school district offered a FAPE, then "no reimbursement is required." *Id.* (citing N.J. Admin. Code § 6A14–2.10(a)).

If, however, the school district did not provide a FAPE, the second inquiry is whether the parents acted appropriately in removing the child from the school district. *Id.* at 199. "[P]arents who . . . 'unilaterally change their child's placement during the pendency of [IDEA] review proceedings' . . . are entitled to reimbursement *only* if a federal court concludes both that the

9

public placement violated IDEA and that the private school placement was proper under the Act." *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

### B.   Section 504 of the Rehabilitation Act

"Section 504 of the Rehabilitation Act of 1973 [("RA")] prohibits discrimination against qualified individuals with disabilities by any 'program or activity receiving Federal financial assistance.'" *C.S.*, 2017 WL 4122433, at *7 (quoting 29 U.S.C. § 794). While "a party may use the same conduct as the basis for claims under both the IDEA and the RA," a "denial of a FAPE is not a *per se* violation of § 504." *Andrew M. v. Del. Cnty. Off. of Mental Health and Mental Retardation*, 490 F.3d 337, 349 (3d Cir. 2007); *J.M. v. Summit City Bd. of Educ.*, 39 F.4th 126, 147 (3d Cir. 2022).

Even if a plaintiff proves a violation of the IDEA, they "must still prove that there was a violation of the RA" to prevail on a Section 504 claim. *See Andrew M.*, 490 F.3d at 349. Thus, to prevail under Section 504, Defendants must demonstrate that M.T. "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). In other words, liability under a denial-of-FAPE claim can result in liability under Section 504 when a plaintiff shows that "disability discrimination was the sole cause for the denial of a FAPE." *See J.M.*, 39 F.4th at 14.

### C.   A District Court's Review of the ALJ's Decision at Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d

Cir. 2000); (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  However, the standard of review "under which this Court considers an appeal of a state administrative decision under the IDEA 'differs from that governing the typical review of summary judgment.'"  *M.A. ex rel. G.A.*, 202 F. Supp. 2d at 359 (internal citations and quotation marks omitted).

"When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ."  *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006).  Where, as here, a district court reviews administrative fact finding without hearing additional evidence, it is required to defer to both the ALJ's factual findings and credibility determinations unless "it can point to contrary nontestimonial extrinsic evidence in the record."  *S.H.*, 336 F.3d at 270; *E.P. v. N. Arlington Bd. of Educ.*, No. 17-08195, 2019 WL 1495692, at *4 (D.N.J. Apr. 1, 2019) (internal citation omitted).  A court can reject an ALJ's findings if it "fully explain[s] its reasons" for doing so.  *S.H.*, 336 F.3d at 271.  "An ALJ's legal determinations, on the other hand, are reviewed de novo."  *D.M. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, No. 22-07500, 2026 WL 821647, at *5 (D.N.J. Mar. 24, 2026) (internal citation omitted).  As such, "a district court is authorized to make findings 'based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education."  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

However, the Court may remand this matter back to the ALJ if the ALJ's opinion fails to adequately explain his factual findings or legal conclusions.  *See B.G. v. Ocean City Bd. of Educ.*, 2014 WL 4798647, at *4 (D.N.J. Sept. 26, 2014) ("[A]fter reviewing a final administrative order, the district court may remand the case to the ALJ for clarification when appropriate[.]"); *A.C. o/b/o*

*Z.B. v. West Windsor-Plainsboro Bd. of Educ.*, No. 21-13016, 2022 WL 17340687, at *8 (D.N.J. Nov. 30, 2022) ("[T]he Court may remand the case to the ALJ for findings and conclusions consistent with appropriate credibility determinations; expansion of the record, including taking additional testimony; and *consideration of discrete legal issues*[.]") (emphasis added).  Courts may remand a case back to the ALJ more than once.  *See Carlisle Area School*, 62 F.3d at 524 ("Although the parents assail the fact that the district court twice remanded the case to the appeals panel, we hold that these remands did not violate IDEA's finality requirements since they advanced rather than impeded the goal of safeguarding access to meaningful judicial review.").  On principle, remand is appropriate because the Court lacks the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy[,] and cannot "substitute [its] own notions of sound educational policy for those of the school authorities."  *See Rowley*, 458 U.S. at 206–08.

### III.    ANALYSIS

In its May 13, 2024 Opinion, this Court remanded this matter back to the ALJ for further factual support and legal analysis.  On remand, this Court asked the ALJ to (1) make credibility determinations  regarding the witnesses who testified throughout the hearing; (2) provide record support for his factual findings; (3) provide a thorough analysis for reaching his conclusion that M.T. was denied a FAPE from January 2020-June 2020 and for the 2020-2021 school year; (4) conduct an LRE analysis separate from the FAPE analysis, with attention to whether the District made efforts to include M.T. in an integrated classroom with supplementary aides and services in the periods in question; (5) provide legal analysis in support of his conclusion that the District

violated Section 504 of the Rehabilitation Act; and (6) separately consider the appropriateness of Hampshire as a placement for M.T.  (Op. at 17–20.)

The ALJ's April 10, 2025 remand decision makes credibility determinations regarding the testifying witnesses, (ALJ Rem. Op. at 9–10, 18–19) and separately considers the appropriateness of Hampshire as a placement for M.T.  (*Id.* at 27, 39, 43–45).  However, the Remand Opinion still fails to provide record support for all factual findings, (*see id.* at 19–28), a thorough legal analysis in support of its FAPE and Section 504 holdings, (*see, eg.*, *id.* at 30–31, 35–37), a separate LRE analysis with attention to whether the District attempted to include M.T. in an integrated classroom with supplementary aides and services, (*see id.* at 33–35, 37–38, 40), or a complete analysis of the appropriateness of Hampshire as a placement for M.T.  (*See id.* at 39–45).

### A.  The ALJ's Factual Findings

To start, many of the ALJ's factual findings in the Remand Opinion remain unexplained and unsupported by citations to the record or pertinent testimony.  Specifically, factual findings 1-41, 44–45, 47–49, 51–53, 55–59, 62, 67, 70–72, 74–75, 78–80, 83, 85–86, 91, 94, and 101 lack any citation to the record.  (*See id.* at 19–29.)  As such, the Court cannot discern the basis for the above-listed findings.  On remand, the ALJ must provide record support for each factual finding.

### B.  The ALJ's FAPE Determinations for the 2019-2020 and 2020-2021 School Years

In his Remand Opinion, the ALJ seemingly concludes that the District denied M.T. a FAPE from January 2020-June 2020 and during the 2020-2021 school year.  (*Id.* at 29–30, 40, 42.)  The ALJ points to an array of factual findings in support of his conclusion, including that (1) the January 2020 IEP did not consider M.T.'s Autism Spectrum Disorder ("ASD") diagnosis or call for further autism testing by the District, did not include a Behavior Assessment, was not modified after M.T.'s elopement, and did not address M.T.'s "maladaptive escape behaviors at all," (*id.* at

35–36); (2) the District did not propose a re-entry program for M.T. to return to school after his elopement during the January 2020 IEP meeting, (*id.* at 37); (3) M.T.'s home instruction during the sixty days following the elopement and preceding the onset of the COVID-19 pandemic was not the LRE, (*id.* at 29, 37); (4) the evidence indicated M.T. did not benefit from talk therapy, which was a key component of the Oasis/Sage program offered by the District during the 2020-2021 school year, (*id.* at 29); and (5) the District failed to discuss alternative placements with M.T.'s parents after receiving notice of their intention to enroll M.T. in Hampshire. (*Id.* at 30.)

### i. The January 2020 IEP

The ALJ's conclusion appears to hinge primarily on the fact that M.T.'s January 2020 IEP was inappropriate, thus denying him a FAPE from January 2020-June 2020 and during the 2020-2021 school year. This Circuit has held that a school district denies a student a FAPE when the IEP is not appropriate. *See P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 739–40 (3d Cir. 2009) ("Tuition reimbursement is a remedy to parents who have unilaterally placed their child in a private school when a district offers their child an inappropriate educational placement and the proposed IEP was inappropriate under the IDEA thereby failing to give the child [a] FAPE."). Further, "in determining whether an IEP was appropriate, the focus should be on [what] the IEP actually offered and not on one that the school board could have provided if it had been so inclined." *S.K. v. Bernards Twp. Bd. of Educ.*, No. 23-01279, 2024 WL 863330, at *11 (D.N.J. Feb. 29, 2024) (quoting *Lascari v. Bd. of Educ. of Ramapo Indian Hills Reg'l High Sch. Dist.*, 560 A.2d 1180, 1189 (N.J. 1989)).

The ALJ's conclusion that the District denied M.T. a FAPE from January 2020-June 2020 and during the 2020-2021 school year continues to hinge on undeveloped factual findings. (*See* Op. at 18.) In his Remand Opinion, the ALJ again concludes that "[s]everal of the goals and

objectives in the IEP were not appropriate because M.T. lacked the prerequisites for those goals and the criteria for mastery did not require independent mastery and therefore were not appropriate to establish meaningful progress," but again fails to identify "the goals and objectives" nor the "criteria for mastery." (ALJ Rem. Op. at 40; *see id*. at 18–19.) Nowhere in the Remand Opinion does the ALJ discuss the provisions of the IEP "actually offered." *See S.K.*, 2024 WL 863330, at *11. The Court cannot evaluate the ALJ's findings (for example, that the District's failure to include a Behavioral Assessment or address M.T.'s maladaptive escape behaviors in the IEP denied M.T. a FAPE), (*see* ALJ Rem. Op. at 36), without understanding how, if at all, the actual provisions of the IEP addressed M.T.'s educational needs.

Relatedly, it remains unclear from the ALJ's factual findings whether an autism diagnosis would have modified the January 2020 IEP. (*See* Op. at 18 & n.10.) As Plaintiff notes, the Remand Opinion does not explain how, if at all, M.T.'s educational needs would have changed because of an autism diagnosis, or that he required additional services as a result. (Dist. Mot. at 27.) The ALJ merely reiterates his prior conclusion that "the District's unwillingness to consider a diagnosis of Autism for M.T., and/or failure to seek an independent evaluation on this diagnosis also constitutes a violation of FAPE, as it may have changed the IEP which was proposed on January 24, 2020." (ALJ Rem. Op. at 29; ALJ Op. at 26.) Without any discussion of the goals or objectives of IEP itself, this Court cannot discern how a contested autism diagnosis would have impacted M.T.'s educational needs and subsequent ability to receive meaningful educational benefits.

The Court concludes that the ALJ's Remand Opinion still fails to adequately "explain the basis for finding that the January 24, 2020 IEP did not meet M.T.'s unique needs from January 2020 through June 2020 and for the 2020-2021 school year." (*See* Op. at 21–22.) On remand, the ALJ must explicitly discuss the "goals and objectives" of M.T.'s IEP, and how the IEP is not

15

"'reasonably calculated' to enable [M.T.] to receive 'meaningful educational benefits' in light of [his] 'intellectual potential.'"  *See Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 198.

ii.  Least Restrictive Environment

The ALJ also concluded that M.T.'s home instruction during the sixty days following the elopement and preceding the onset of the COVID-19 pandemic was not the LRE.  (ALJ Op. at 29, 37.)  Yet, the ALJ's LRE analysis remains intertwined with his FAPE analysis.  (*See* Op. at 18; ALJ Op. at 26 ("Based on a series of actions by the District following M.T.'s elopement on January 14, 2020, I **FIND** that the District did not provide FAPE to M.T. in the least restrictive environment following the incident …"); ALJ Rem. Op. at 29 (same).)  And as discussed, a LRE analysis requires a determination of both  (1) "whether education in the regular classroom, with the use of supplementary aids and services, can be achieved satisfactorily," and (2) in the event the Court finds placement outside of the regular classroom is necessary, "whether the school has mainstreamed the child to the maximum extent appropriate[.]"  *Oberti*, 995 F.2d at 1213-15.  But contrary to this Court's previous instruction, the ALJ's Remand Opinion still fails to include any cogent analysis as to whether "the District made efforts to include M.T. in an integrated classroom with supplementary aides and services in either January 2020 through June 2020 or for the 2020-2021 school year when concluding M.T. was denied a FAPE," and whether those efforts could "be achieved satisfactorily."  (Op. at 3, 19); *see Oberti*, 995 F.2d at 1213–15.  Instead, the ALJ concludes that home instruction was not the LRE because it was "a more restrictive environment than the IEP which was in place at the time," (ALJ Rem. Op. at 29), and because the District

16

allegedly knew M.T.'s behavior was "significantly different at home than at school," (*id*. at 37). The Court again instructs the ALJ to consider this issue on remand.

### iii.    The District's Alleged Failures to Propose a Re-Entry Program Post-Elopement and to Discuss Alternative Placements with Defendants

The ALJ also concludes that the District's alleged failures to propose a re-entry program for M.T. to return to school after his elopement and to discuss alternative placements with his parents after receiving notice of their intention to enroll M.T. in Hampshire amount to a denial of FAPE. (*Id*. at 27, 29, 30, 45.) However, the ALJ provides no explanation as to how, if at all, these alleged failures deprived M.T. of a FAPE or rendered his January 2020 IEP inappropriate. The ALJ must provide this analysis on remand.[3]

### C.    The ALJ's Determination that Hampshire was an Appropriate Placement

Placement at a residential program is "appropriate" and reimbursable by a school district if the program "provides significant learning and confers meaningful benefit," and "is the sort of program that the public school should have taken financial responsibility for in the first place." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 242 (3d Cir. 2009); *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 430 (3d Cir. 2013). In evaluating this second prong, the Third Circuit considers "whether full-time placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social, or emotional problems that are segregable from the learning process." *Mary T.*, 575 F.3d at 243–44. In other words, "[s]chool districts are not … financially responsible for the placement of students who need twenty-four-

---

[3] The Court also notes that the ALJ provided no record citation for his finding that the District responded to Defendants' 10-day notice of their intention to place M.T. in Hampshire with a statement that it would "vigorously defend [its] position in litigation." (*See* ALJ Rem. Op. at 12, 17, 39.) This fact must also be supported on remand.

hour supervision for medical, social, or emotional reasons, and receive only an incidental educational benefit from that placement." *Munir*, 723 F.3d at 432.

The ALJ does not analyze whether M.T.'s placement at Hampshire was necessary for educational purposes. The ALJ focuses on a combination of the educational, social, and emotional benefits Hampshire provided. (*See, e.g.*, ALJ Rem. Op. at 28 ("M.T. no longer needed personal accompaniment during recreational times."); *id.* at 29 ("M.T.'s first trimester report … showed clear academic progress."); *id.* ("Dean Ciglar and Ms. Bruno noted growth and development in [M.T.'s] managing his own behavior. . ."); *id.* at 44 ("M.T.'s mother said that while at Hampshire he 'thrived,' had 'grown to be able to advocate for himself,' 'made honor roll for the first time,' and 'can read a book.'"); *id.* ("M.T.'s father testified that … socially he's doing a lot better.").) On remand, the ALJ must assess "the strength of the link" between the social and emotional benefits provided by Hampshire and M.T.'s "educational needs." *See Munir*, 723 F.3d at 432.

Further, the ALJ concludes that the District "failed to observe proper protocol and due process as required under N.J.A.C. § 6A:14–2.10(c)" when, in response to receiving written notice from Defendants regarding their plans to send M.T. to Hampshire, it allegedly stated that it would "vigorously defend the District program offered through litigation." (ALJ Rem. Op. at 39.) N.J.A.C. § 6A:14–2.10(c) imposes an obligation on parents to notify "the district board of education of their concerns and their intent to enroll their child in a nonpublic school at public expense." *A.Z. ex rel M.Z. v. Mahwah Twp. Bd. of Educ.*, 2006 WL 827791, at *3 (D.N.J. Mar. 390, 2006) (citing § 6A:14–2.10(c)). The statute does not impose a due process obligation on the District, and the ALJ provides no legal support or analysis explaining where the District's due process or other legal obligations stem from. On remand, the ALJ must identify where the

18

District's legal and due process obligations to explore other options during the ten-day notice period derive from and analyze how the District failed to meet them.

### D. Stepping Forward Expenses

The ALJ concludes that Defendants were entitled to reimbursement for transportation and other expenses they incurred by enrolling M.T. in Stepping Forward.  (ALJ Rem. Op. at 46.)  The IDEA requires schools to provide both special education and related services "in order to furnish students with a FAPE."  *Mary T.*, 575 F.3d at 246.  "Transportation is a related service that is required when necessary for a student to access and obtain educational benefits."  *S.M. o/b/o B.M. v. Freehold Reg'l Sch. Dist. Bd. of Educ.*, No. 22-107, 2024 WL 180827, *8 (D.N.J. Jan. 17, 2024); *see also* N.J.A.C. § 6A:14–3.9.  Under the IDEA, transportation for students with disabilities may also be provided as required in a student's IEP.  N.J.A.C. § 27-5.1(a)(1); *L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist.*, No. 04-1381, 2009 WL 2488181, at *4 (D.N.J. Aug. 11, 2009) (noting that school districts are not required to provide transportation under all circumstances, and that students may be provided with transportation in accordance with their IEP).

However, medical services under the IDEA are only covered to the extent that they are "for diagnostic and evaluation purposes only."  *Mary T.*, 575 F.3d at 246 (citing 20 U.S.C. § 1401(26)(A)).  And this Court has previously acknowledged that Stepping Forward is a "psychiatric facility," concluding, as a result, that a school district was not required to reimburse a child's expenses while at Stepping Forward.  *L.B. v. Roselle Bd. of Educ.*, 2025 WL 1793927, at *11 (D.N.J. June 30, 2025) (affirming an ALJ's conclusion that since "Stepping Forward is a

19

medical facility" and "d[oes] not function as a school," a school district was not "responsible for reimbursement of [parents'] expenses as to [their child's] care there").

Here, the ALJ offers no legal support or analysis supporting its conclusion that the District was required to cover Defendants' transportation or other costs with respect to Stepping Forward. The ALJ's Remand Opinion does not explain how Stepping Forward was necessary for M.T. to obtain educational benefits, nor does it clarify whether M.T.'s IEP requires transportation. On remand, the ALJ must explain how, if at all, Defendants' transportation and other costs stemming from M.T.'s enrollment in Stepping Forward constitute a reimbursable related service under the IDEA, and not a non-reimbursable medical expense.

### E. Section 504

The Court also concludes that the ALJ's Remand Opinion still fails to provide adequate legal analysis as to how the District violated M.T.'s rights under Section 504 of the Rehabilitation Act. The ALJ simply states "I further **FIND** that the District violated FAPE under IDEA. Having reviewed the federal court's remand and the submissions of both parties, a 504 analysis is not needed or applicable. Therefore, petitioners are entitled to reimbursement of all cost related to private evaluations and expert witnesses identified herein." (ALJ Rem. Op. at 30–31.)

While it is not immediately clear from the ALJ's Remand Opinion, the Court assumes that the ALJ concluded the District violated Section 504 since expert fees are recoverable under the Rehabilitation Act, but not IDEA. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298, 301 (2006) (holding that IDEA does not authorize an award of expert fees to prevailing

20

parties); *L.T. ex rel. B.T.*, 2009 WL 2488181, at \*2 (holding that Section 504 of the Rehabilitation Act contemplates an award of expert fees).

Further, as discussed, the Third Circuit has held that a "denial of a FAPE is not a *per se* violation of § 504." *J.M.*, 39 F.4th at 147 (3d Cir. 2022). While liability under a denial-of-FAPE claim can result in liability under § 504 when a plaintiff shows that "disability discrimination was the sole cause for the denial of a FAPE," *id.*, the ALJ provided no legal support or analysis to this effect. On remand, the ALJ must clearly articulate, with legal support, how, if it all, Defendants can prove a Section 504 violation. *See Andrew M.*, 490 F.3d at 349 (noting that "a plaintiff must still prove that there was a violation of [Section 504] of the RA" even if "a party may use the same conduct as the basis for claims under both the IDEA and the RA").

### F. Stay Put Protections

Defendants argue that M.T. was entitled to stay put protections with respect to his continued placement at Hampshire. (Defs. Mot. at 33.) In opposition, Plaintiffs argue that M.T. is not entitled to stay put protections because such a provision is "inoperative until the state or local educational authorities and the parents agree on a new placement," or, in the alternative, because the request for stay put protections is mooted by the fact that M.T. is no longer enrolled in Hampshire. (Dist. Opp. at 23–26.) The Court concludes that Defendants' request for stay put protections is moot.

In cases "where a *parent* unilaterally removes a child from an existing placement determined in accordance with state procedures, and puts the child in a different placement that was not assigned through proper state procedures," *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 651 (3d Cir. 2000), this Circuit has held that a "ruling by the education appeals panel in favor of the parents' position constitutes an agreement" which activates the

21

pendent placement (stay put) provision. *Susquenita Sch. Dist. v. Raelee S. By and Through Heidi S.*, 96 F.3d 78, 83–44 (3d Cir. 1996). Such an agreement can impose "financial responsibility on the part of the local school district" with respect to the child's present and future pendent placement in the private school. *See id.* at 84. Stay put protections "function[], in essence, as an automatic preliminary injunction" which ensures that children "remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996).

Here, the record reflects that M.T. was only enrolled at Hampshire through June 2023. (ECF 116-1 ¶ 41; Dist. Opp. at 25 & n.3.) Given that M.T. is not currently enrolled at Hampshire, the Court is unable to grant Defendants' requested relief of a stay put protection with respect to the Hampshire placement. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d690, 698–99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."). Given that there is no need for the Court to ensure that M.T. can remain at Hampshire throughout the remainder of this dispute, or that the District funds M.T.'s continued placement at Hampshire, Defendants' request for a stay put protection is moot. *See, e.g.*, *Q.M. v. Cent. Bucks Sch. Dist.*, No. 23-3180, 2024 WL 841777, at *18 (E.D. Pa. Feb. 28, 2024) (denying parents' motion for a stay-put order as moot because the parties did not dispute the child's current educational placement and the "stay-put issue [wa]s not a justiciable controversy").

### G. Attorneys' Fees

Given that this Court has remanded this matter back to the ALJ for further factual and legal analysis, it will not consider Defendants' request to apply to the court for the payment of attorneys'

22

and expert fees and costs at this time.  Such a request will be considered if, on remand, the ALJ again concludes that Defendants are the prevailing party in the pending due process action.  *See K.N. v. Passaic City Bd. of Educ.*, No. 11-399, 2011 WL 5157280, at \*5 (D.N.J. Oct. 28, 2011) ("A prevailing party is entitled to seek attorney's fees and costs pursuant to Section 1415(i)(3)(B) of the IDEA … [f]or a party to qualify as a 'prevailing party,' they must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'").

## IV.    CONCLUSION

For the reasons stated herein, the District's Motion is **DENIED** and Defendants' Motion is **DENIED**.  The Court **REMANDS** this matter to the Administrative Law Judge for further proceedings consistent with this Opinion.  An appropriate order follows.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:    Clerk
cc:       Cari Fais, U.S.M.J.
            Parties

23